No. 14,117.                                  |123  565|
                                             |131  270|

## SPRAY v. BURK.

PROMISSORY NOTE.—*Gambling Debt.*—*Endorsee.*—*Action by.*—A non-nego-
tiable note, given for a gambling debt, is not valid and collectible in the
hands of an assignee who purchased the same with knowledge that the
note was given for such debt, but after the maker had stated to him that
the note was all right, and that he would pay it when due, it not appear-
ing that the purchaser relied upon or was deceived by the statement.

From the Jackson Circuit Court.

*B. H. Burrell,* for appellant.
*F. Branaman,* for appellee.

OLDS, J.—This was an action upon a promissory note ex-
ecuted by the appellant to one George A. Carter for $175,
and by Carter assigned to the appellee.

The appellant answered in three paragraphs: 1st. Gen-
eral denial. 2d. No consideration, and 3d. That the note
was executed for a gambling debt; that the said Carter won
from the appellant the amount of the note in a game of
cards, and the appellant executed the note for and in consid-
ertion of said sum so won at cards.

The plaintiff, appellee, replied in two paragraphs: 1st.
A general denial, and 2d. An estoppel; that he had no
knowledge for what said note was given, and that before he
purchased the same he informed the appellant that he was
about to purchase the same, and appellant stated to him the
note was all right, and that it was valid; that he would pay
the same as soon as it would become due, and directed the
appellee to purchase the same, and that appellee relying on
the statements of the appellant, and having no knowledge as
to what the note was given for, or that it was given for an
illegal consideration, purchased the same for a valuable con-
sideration.

The cause was submitted to a jury and a trial had, resulting in a verdict for appellee for the amount of the note.   Upon the trial of the cause, it was admitted that the note was given for money won by Carter, the payee, from the appellant at a game of cards, which sum so won was all the consideration for said note, and that the note was illegal and void, unless the appellant was estopped from setting up such defence to said note in the hands of the appellee.

The appellee and his brother testified to a conversation had between appellee and appellant before the appellee purchased the note.   They testified that in such conversation the appellant told the appellee that the note was all right, and that he would pay it when due ; that he thought the note was all right when he traded for it.   They further testified as to what other conversation occurred ; that appellee was owing the appellant a debt for a span of mules and could not pay it then, and that appellee told the appellant that he could trade the mules for the note held by Carter, the note sued upon.   They testified that this conversation occurred at the mill at Ewing.

The foregoing is, in brief, all of the testimony of said witness or witnesses in behalf of the appellee in support of his reply in estoppel.

The appellant denied making any such statement to the appellee about the note in suit.

The appellant and some five or more witnesses testified to at least two conversations between appellant and appellee other than the conversation testified to by appellee at the mill, in which appellant told appellee that the note was given for a gambling debt, and that he would not pay it, and that he should not purchase or trade for it, and if he did he would lose it.   The appellant testified to the two conversations, and was corroborated by five witnesses ; some testified to being present at one of the conversations and some at the other.   Other witnesses testified as to admissions of appellee, in which he stated that he knew before he purchased the note that it was

given for a gambling debt, but that he thought he could make appellant take it in payment of the debt he owed the appellant for the mules, and that Carter said it was all right. The conversations testified to by appellant's witnesses were not disputed by the appellee, nor did he dispute any of the admissions that the witnesses testified as to his having made.

From the evidence in the record, all that can be claimed for it is that it shows that at one time before the purchase of the note the appellant told the appellee that the note was all right, and that he would pay it when it became due. This, however, is disputed, and the undisputed evidence shows that upon two or more occasions before appellee purchased the note appellant told him what the note was given for, and that he would not pay it.

By evidence undisputed it is shown that appellee knew all about what the note was given for at the time he traded for or purchased the note. Appellee himself does not testify to the contrary. It is true he says he thought it was all right, but his admissions testified to, and not denied by him, explain this expression, as he states that he knew the note was given for a gambling contract, but he thought it was all right, that he could make the appellant take it on the debt he was owing him for the mules. The appellee does not even state in his testimony that he relied upon the statement of the appellant, and was induced by such statement to purchase or trade for the note ; nor does he deny that he knew the note was given for such gambling debt at the time he purchased it.

The appellant filed a motion for a new trial, which was overruled, and he excepted, and judgment was rendered for appellee on the verdict.

The sufficiency of the evidence to support the verdict is questioned by the motion for a new trial.

The question presented by the evidence is as to whether or not a note given for a gambling debt is valid and collectible in the hands of an assignee who purchased the same

with knowledge that the note was given for such debt, but after the maker has stated to him that the note is all right, and that he will pay it when due, but without it appearing that the purchaser relied upon or was deceived by such statement of the maker.

The note in suit in this case is not payable at any bank.

By section 4950, R. S. 1881, the note is void, and the maker may defend against the note and defeat a recovery in the hands of an assignee unless he is estopped under the facts in this case.

The law is pretty well settled that where a statute declares that a note given for a gambling debt shall be void, such note is invalid in the hands of a *bona fide* purchaser even if such note is negotiable in its nature, and even if the maker has induced the assignee to purchase the same by representing to such assignee that the note is valid before he purchases the same, and he is thereby induced to purchase the same by reason of such representations of the maker. It is doubtful whether the maker is estopped from setting up his defence to the note. *Sondheim* v. *Gilbert*, 117 Ind. 71.

The note in question in this case was void, it would constitute no consideration for a new promise. The appellee had full knowledge at the time he purchased the note that the note was given for a gambling debt, that the note was void, that there was no consideration for the promise of the maker to pay the note. With this knowledge he was not deceived, he could not have believed the note was valid and binding at the time he purchased it. He had no right to rely upon a promise of the maker to pay a note which he knew was given for a gambling debt, and was without consideration, and he was bound to know that there was no consideration for the promise.

The facts as shown by the evidence do not constitute an estoppel even if in such a case as this a party can be estopped from defending against the note.

There is no evidence to support the verdict, and the court

erred in overruling the motion for a new trial, and the judgment must be reversed.

Judgment reversed, at costs of appellee, with instructions to the court below to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.

Filed May 14, 1890.